IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KERRIE BARNES, | CIVIL NO. 23-00421 SASP-KJM |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| GPSI/KINAOLE FOUNDATION, | |
| Defendants. | |

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendants Galaide Professional Services Incorporated ("GPSI") and Kīnāʻole Foundation's (collectively "Defendants") Motion for Summary Judgment ("Motion"), filed on February 7, 2025. [ECF No. 46.] The operative pleading is Plaintiff Kerrie Barnes' ("Barnes") Complaint, ECF No. 1, filed on October 12, 2023. The Court finds this matter suitable for disposition without a hearing pursuant to LR7.1(c) of the Local Rules of Practice for the United States District Court ("Local Rules"). After careful consideration and for reasons to be discussed, the Court GRANTS Defendants' Motion.

## I.    BACKGROUND[1]

Between August 21, 2022, and September 9, 2022, Barnes applied for multiple in-office positions at GPSI,[2] a 501(c)(3) organization, including the Human Resources ("HR")

---

[1] This section is not intended to be a comprehensive summary of all the facts, but rather, a broad overview of the relevant background information. Other facts pertinent to this Court's decision are summarized below to the extent they are applicable.

[2] Kīnāʻole acquired GPSI in 2019. GPSI has its own employees, but Kīnāʻole also provides recruiting, human resources, and other administrative services for GPSI (and Kīnāʻole-affiliated entities).

Manager position at GPSI's Guam office.[3] [ECF No. 47 at PageID.202.] During the application

process, Barnes voluntarily disclosed her race as "Black or African American" on the application

forms. [*Id.*] Neither of the people who interviewed Barnes reviewed her demographic data before

speaking with her or during the hiring process. [*See* ECF No. 47-1 at PageID.208; ECF No. 47-8

at PageID.231.] GPSI's Recruiting Manager, Claudia Ellis ("Ellis") conducted the initial

screening interview on or about September 16, 2022, via Microsoft Teams[4] without video. [*Id.*]

During this interview, Ellis clarified that the position required in-office work in Guam, and

Barnes indicated she was in the process of relocating there on her own. [*Id.*] Ellis subsequently

informed her that the position could either be an HR Manager or HR Generalist role, contingent

on whether the then-current GPSI HR Manager decided to leave. [*Id*. at PageID.210.] Barnes

inquired about remote work and Ellis informed her that no GPSI employees work remotely. [*Id.*]

However, occasional work-from-home days due to extenuating circumstances—such as waiting

for a repairman—would be allowed. [*Id.*] On September 27, 2022, HR Manager, Jeanette Munoz

("Munoz") interviewed Barnes via Microsoft Teams. [*Id.*] During that interview, Munoz told

Barnes that the available position would either be a Manager or Generalist role, and Barnes

affirmed her continued interest. [*Id*. at PageID.211.]

On October 6, 2022, Barnes was verbally offered the Senior HR Generalist

position for GPSI. [ECF No. 47 at PageID.204.] The following day, Barnes accepted and

electronically signed the written offer that included her terms of employment.[5] [*Id.*] On or about

---

[3] Each of the positions Barnes applied for required on-site work at GPSI's Guam office.

[4] Microsoft Teams is a cloud-based communication and collaboration platform that enables users
to chat, share files, hold virtual meetings, and make voice and video calls.

[5] The offer letter does not mention remote work and states that employment is at-will. [*See* ECF
No. 47 at PageID.204.]

October 20, 2022, Barnes emailed Ellis and Munoz about picking up a standard-issue work laptop from GPSI's office that day. [ECF No. 47 at PageID.205.] In response, Munoz contacted Barnes after realizing that she had been given an incorrect start date of October 21, 2022. [*Id.*] According to Munoz, during the October 20, 2022 phone call, Barnes raised purported concerns about the position, raised her voice, and adopted a confrontational tone during the phone call. [*Id.*] The following day, citing serious concerns about Barnes' judgment, professionalism, composure, and ability to maintain a professional working relationship between them, Munoz rescinded Barnes' job offer for Senior HR Generalist.[6] [*See* ECF No. 47-8 at PageID.237.]

Following the rescission, Barnes filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging racial discrimination.[7] [ECF No. 47-14 at PageID.251.] The EEOC issued a Notice of Right to Sue on October 2, 2023, *see* ECF No. 1-1 at PageID.55, and Barnes filed her Complaint on October 12, 2023, ECF No. 1, asserting claims of discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. She alleges that, after disclosing her African American identity in new-hire paperwork, Munoz treated her unfairly, and despite meeting all qualifications for the HR Manager position, her job title was unjustifiably demoted to Senior HR Generalist. [ECF No. 1 at PageID.4.] Barnes further alleges that Munoz and Ellis unlawfully revoked her job offer an hour prior to her scheduled start time and provided her with the wrong job site address. [*Id.*] Her outreach to her supervisor after the alleged incident went unanswered. [*Id.*] Subsequently, her offer was

---

[6] Barnes does not dispute her rescission: Barnes noted that her job offer was rescinded on October 21, 2022, stating "Jeanette Munoz and Claudia Ellis told me on my start date via phone call they did not feel I was right for the position." [ECF No. 47-16 at PageID.257.]

[7] Barnes filed a Charge of Discrimination with the EEOC on October 21, 2022. [ECF No. 47-14 at PageID.251.]

rescinded. [*Id*.] Based on this conduct, Barnes contends that her offer was revoked based on her race, color, and ethnicity. [*Id*.]

Defendants, however, present facts indicating that the offer was rescinded only after Barnes demonstrated unprofessional conduct incompatible with an HR role, specifically, raising her voice to her future supervisor regarding employment terms already accepted in writing. [*See* ECF No. 46-1 at PageID.181.] Defendants further assert that Barnes cannot produce any direct or circumstantial evidence of discriminatory intent. [*Id*. at PageID.185.]

Defendants filed their Motion on February 7, 2025, asserting that there are no genuine issues of material fact to overcome summary judgment in this case. [ECF No. 46 at PageID.184.] On May 12, 2025, Barnes filed her Opposition. [ECF No. 79.] Defendants filed a Reply on May 22, 2025, ECF No. 82, and Barnes filed a Response to Defendants' Concise Statement of Material Facts ("Response to Defendants' CSF" or "Response") on May 28, 2025. [ECF No. 87.]

## II.    STANDARD OF REVIEW

### A.    Summary Judgment

A principal purpose of summary judgment is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the nonmoving party seeks judgment. 477 U.S. at 323. The moving party does not need evidence negating or disproving every essential element of the non-moving party's case. 477 U.S. at 325. Instead, the moving party must merely "point [] out to the district court—that there is an absence of evidence to support the nonmoving party's case."

*Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) (citing *Celotex Corp.*, 477 U.S. at 325).

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 56(c). In making this assessment, the court must view the evidence in the light most favorable to the non-moving party. *Betz v. Trainer Wortham & Co.*, 519 F.3d 863, 865, 867 (9th Cir. 2008). It does not weigh the evidence, but only determines whether there is a genuine issue for trial. *Id.* (citing *Abdul–Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 410 (9th Cir. 1996)).

A dispute is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." 248, 106 S. Ct. 2505. The bare existence of a "scintilla" of evidence in support of the non-moving party's position is not sufficient. 252, 106 S. Ct. 2505.

### B.    Special Consideration for Pro Se Litigants

Although pro se litigants "must be ensured meaningful access to the courts," *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (citations omitted), and should be treated with "great leniency" when evaluating their compliance with the technical rules of civil procedure, *Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986) (citations omitted), in the ordinary civil

case, they "should not be treated more favorably than parties with attorneys of record," *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986). Like other litigants, pro se litigants must comply with all local, federal, and other applicable rules and/or statutes. Local Rules LR81.1(a); *see also Carter v. Comm'r of Internal Revenue*, 784 F.2d 1006, 1008 (9th Cir. 1986) (citations omitted) ("Although pro se, [the plaintiff] is expected to abide by the rules of the court in which [s]he litigates."); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted) ("Pro se litigants must follow the same rules of procedure that govern other litigants."), *overruled on other grounds*, *Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012).

While pro se pleadings are subject to "less stringent standards" than those drafted by attorneys, pro se litigants are not entitled to lenient evidentiary standards for purposes of summary judgment. *Patterson v. Miller,* 451 F. Supp. 3d 1125 (D. Ariz. 2020) citing *Price v. Peerson*, CV 13-3390 PSG (JEMx), 2014 WL 12579823, at *4 (C.D. Cal. 2014); *see also Jacobsen v. Filler*, 790 F.2d 1362, 1364-65 (9th Cir. 1986) ("First and foremost is that *pro se* litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record."). Furthermore, if a pro se plaintiff fails to present any evidence to support her opposition to a defendant's motion for summary judgment, the plaintiff cannot demonstrate that there is a genuine issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218-19 (9th Cir. 2007). A district court does not have a duty to search for evidence that would create a factual dispute…even for pro se litigants. *Id.*

## III.        DISCUSSION

### A.        Pro Se Plaintiff's Noncompliance with Applicable Procedural Rules

Defendants argue that they are entitled to summary judgment on Barnes' claims because she cannot establish a prima facie case of discrimination and because their actions were

based on legitimate, non-discriminatory reasons. In contrast, Barnes contends that genuine factual disputes exist that should be resolved by a jury.

### 1.    Unsupported Factual Positions

When considering a motion for summary judgment against a pro se plaintiff, the Court must consider as evidence the pro se party's contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where the pro se party attested under penalty of perjury that the contents of the motions or pleadings are true and correct. *Jones v. Blanas,* 393 F.3d 918, 923 (9th Cir.2004). As the party opposing the motion for summary judgment, Barnes "must 'designate specific facts showing that there is a genuine issue for trial.'" *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1048 (9th Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). She must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citations omitted). Such evidence may include affidavits or declarations, admissions, interrogatory answers, or other materials. Fed. R. Civ. P. 56(c)(1)(A).

LR56.1 further requires the opposing party to file "a separate document containing a single concise statement that admits or disputes each fact set forth in the movant's concise statement," and to assert, in a separate section, any additional facts the court should consider. Local Rules LR56.1(e).

Barnes' filings, ECF Nos. 79 and 87, fail to comply with these requirements. Although ECF No. 87 appears to be her attempt at a concise statement of facts, Barnes has not submitted a declaration attesting "under penalty of perjury that the contents of the motions and

pleadings are true and correct."[8] *See* 28 U.S.C. § 1746 (making unsworn statements admissible

as long as they are attested to under penalty of perjury); *Johnson v. Meltzer*, 134 F.3d 1393, 1400

(9th Cir. 1998) (citation omitted) (stating that "a verified motion functions as an affidavit").

Without such attestation, her unsworn factual assertions are not admissible for purposes of

opposing summary judgment. *See id*.

Moreover, the record demonstrates that Barnes is aware of these procedural

obligations, as she expressly cites to "Fed. R. Civ. P. 56(c) and LR56.1 in her filing. [*See* ECF

No. 87 at PageID.726.] Her failure to comply with the applicable rules, despite this awareness,

further undermines the evidentiary value of her Opposition and Response.

Barnes' reliance on the exhibits attached to her Opposition and Response is also

unavailing because of inadequate authentication. [*See* ECF Nos.79 and 87.] These exhibits

include a written offer rescission notice; the HR Manager interview invitation; email

communications with Defendants regarding onboarding, background check, and start date;

calendar entries and call logs reflecting time zone coordination; and correspondence escalating

concerns to management, all submitted to establish the sequence of events leading to the

rescission. [*See id*.] However, Barnes has not attached any affidavit or declaration through which

these documents could be authenticated.

As the Ninth Circuit Court of Appeals has explained, "documents authenticated

through personal knowledge must be 'attached to an affidavit that meets the requirements of

[Fed. R. Civ. P.] 56(e) and the affiant must be a person through whom the exhibits could be

---

[8] In Barnes' Response to Defendants' CSF, she claims: "Plaintiff disputes several of Defendants' asserted facts and presents the following responses based on the record, sworn declarations, and admissible evidence." However, she failed to include any such documents, such as a declaration. Even construing her statement liberally, the Court cannot and may not reasonably treat it as a valid attestation in lieu of a properly executed declaration.

admitted into evidence.'" *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773-74 (9th Cir. 2002)

(quoting *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987)), *amended*

(Apr. 5, 2002). "A document which lacks a proper foundation to authenticate it cannot be used to

support a motion for summary judgment." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896

F.2d 1542, 1551 (9th Cir. 1989) (citations omitted). Because Barnes has submitted no affidavit

through which her exhibits could be authenticated, the Court may not consider them as evidence

for purposes of summary judgment.

That said, the Court may consider properly authenticated materials already in the

record. *See* Fed. R. Civ. P. 56(c)(1)(A); *see also Celotex Corp.*, 477 U.S. at 324 ("Rule 56(e)

permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary

materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that

one would normally expect the nonmoving party to make the showing to which we have

referred."). Here, excerpts from Barnes' deposition, ECF No. 83-4, have been properly

authenticated. The deposition was submitted as part of Defendants' Concise Statement of Facts

in Support of ECF No. 82, and referenced in Barnes' Response, ECF No. 87. [*See* ECF No. 83.]

Therefore, the deposition is considered in connection with Defendants' motion for summary

judgment.

2.     *Barnes' Claims*

Barnes' claims are brought pursuant to Title VII of the Civil Rights Act of 1964

("Title VII"). [ECF No. 1 at PageID.3.] Title VII makes it unlawful for an employer to

discriminate against an employee "because of such individual's race, color, religion, sex, or

national origin." 42 U.S.C.2000e–2(a). Such claims are generally evaluated under the burden-

shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03

(1973). Under this framework, the plaintiff must first establish a prima facie case of

discrimination. 411 U.S. at 802. If she does so, "the burden of production, but not persuasion,

then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the

challenged action." *Maybin v. Hilton Grand Vacations Co.*, LLC, 343 F.Supp.3d 988, 994 (D.

Haw. 2018) (citation omitted). If the defendants meet that burden, then the plaintiff "must raise a

triable issue of material fact as to whether [defendants'] proffered reasons for the adverse

employment actions are mere pretext for unlawful discrimination." *Id*. at 994-95 (quotation

marks and citation omitted).

> **B.     Barnes fails to establish a prima facie case of Title VII discrimination.
> Alternatively, Defendants have sufficiently articulated legitimate,
> nondiscriminatory reasons for rescinding the offer.**

Under Title VII, the plaintiff bears the initial burden of establishing a prima facie

case of racial discrimination. In a failure-to-hire claim, a plaintiff must first show: (1) she

belongs to a protected class; (2) she applied and was qualified for the position; (3) though

qualified, she was rejected; and (4) after her rejection, the position remained open, and the

employer continued to seek applicants with similar qualifications. *See McDonnell Douglas*, 411

U.S. at 802. Establishing this prima facie case gives rise to a presumption of discrimination.

The burden then shifts to the defendant to rebut this presumption by articulating a

legitimate, non-discriminatory reason for the employment decision. *Cornwell v. Electra Cent.

Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006). To meet its burden, the defendant "need only

produce admissible evidence which would allow the trier of fact rationally to conclude that the

employment decision had not been motivated by discriminatory animus." *Raad v. Fairbanks

North Star Borough School Dist.*, 323 F.3d 1185, 1196 (9th Cir. 2003).

Here, Barnes asserts in her Opposition that she satisfies all elements of a prima facie case of discrimination. [*See* ECF No. 79 at PageID.597.] She contends that: (1) she is Black; (2) she was qualified for the HR position, as evidenced by the offer and onboarding; and (3) her job offer was rescinded despite being qualified. [*Id.*] However, she fails to address the pre-employment conduct during the October 20, 2022 phone call that Defendants claim rendered her unprofessional and unqualified for the role.

Defendants do not dispute that Barnes belongs to a protected class or that they continued to seek HR employees after rescinding her offer, thereby satisfying the first and fourth elements. [ECF No. 46-1 at PageID.188.] However, Defendants argue that Barnes cannot satisfy the second and third elements of a prima facie claim because her conduct prior to her start date revealed that she was not, in fact, qualified for the position. Moreover, she cannot demonstrate that rescission was motivated by race. The Court agrees.

At issue in this case is whether Barnes remained qualified for the position at the time the offer was rescinded. While Defendants acknowledge that Barnes appeared qualified throughout the interview process, they assert that she revealed herself to be unqualified shortly before her start date by "disput[ing] her terms of employment, becoming confrontational…" regarding terms she had previously accepted in writing. [ECF No. 46-1 at PageID.171.]

It is undisputed that the October 7, 2022 offer letter clearly states that the position reports to Jeanette Munoz, HR Manager, and is "based out of Guam," but it does not mention remote work. [ECF No. 47-3 at PageID.218.] It is also undisputed that Munoz conducted multiple video interviews with Barnes, with cameras on, via Microsoft Teams.

Barnes acknowledges that the decision[9] to rescind her offer followed an

interaction on or around October 20, 2022. She argues, however, that the timing suggests

discriminatory intent, noting that the rescission occurred "shortly after she identified her race."

[ECF No. 79 at PageID.598.] However, the record supports Defendants' position that the

rescission was based on concerns about Barnes' conduct after the offer was extended.

Specifically, Defendants point to her insistence on remote work, despite the explicit, clear terms

of the offer letter, and her confrontational tone in subsequent communications as the bases for

rescinding the offer. Moreover, Munoz and Ellis conducted their interviews with Barnes via

Microsoft Teams, with cameras on. It defies logic to suggest that Defendants would knowingly

extend an offer to Barnes despite her race, only to rescind it days later for that very reason absent

any intervening developments. Barnes' argument is unsupported by the record and lacks

plausible logic.

As Defendants have articulated a legitimate, nondiscriminatory reason, the burden

shifts back to Barnes to demonstrate the existence of a triable issue of material fact as to whether

that reason was pretextual and whether unlawful discrimination was the actual motive. *Maybin*,

343 F.3d at 994-95. Assuming arguendo that her Opposition and Response to Defendants' CSF

are admissible, her argument still fails. Barnes claims she "maintained professionalism

throughout" and that "no documentation exists to support Defendants' claim of misconduct."[10]

---

[9] In Munoz's declaration, she states, "The sole reason Ms. Barnes' position was rescinded was her behavior on October 20, 2022." [ECF No. 47-1 at PageID.215.]

[10] Barnes entirely ignores the conversation from the October 20, 2022 phone call in any of her filings. She fails to address or refute her confrontational tone or that she raised her voice. Although she includes email correspondence in the exhibits in ECF Nos. 79 and 87 purporting to demonstrate her professionalism, these emails are either from before or after the call and do not address the conduct at issue. Her generalized assertion that the allegations of unprofessionalism during the call "is disputed, lacks contemporaneous support, and is contradicted by written emails from the same day" is unsubstantiated. [*See* ECF No. 79 at PageID.597.]

[*See* ECF No. 87 at PageID.726.] However, these are blanket statements that do not necessarily rebut the specific unprofessional conduct cited by Defendants, namely, that she raised her voice and sounded confrontational during a phone call on October 20, 2022. Her general defense of professionalism throughout the course of her interaction with Defendants is insufficient in refuting the phone call incident. Barnes relies solely on the speculative timing of the rescission and subjective belief that it was discriminatory, neither of which are sufficient to raise a genuine dispute of material fact.

After reviewing the parties' filings and supporting evidence, the Court concludes that Barnes has failed to meet her burden as she fails to suggest that Defendants' stated reason was false or that it masked a discriminatory motive. Accordingly, the Court finds that Barnes has failed to establish a prima facie case of employment discrimination under Title VII. Even assuming arguendo that a prima facie case exists, the Court finds that she has also failed to rebut Defendant's non-discriminatory rationale with evidence of pretext for its employment decision.

> **C.     In the alternative, Barnes has not presented sufficient direct or circumstantial evidence that her offer was rescinded for a discriminatory reason.**

The Ninth Circuit of Appeals and this Court have recognized that a plaintiff may defeat summary judgment by "engaging in the *McDonnell Douglas* burden shifting analysis[,]" as previously discussed in the preceding section, or by providing "direct or circumstantial evidence 'that a discriminatory reason more likely [than not] motivated the employer." *Rutenschroer v. Starr Seigle Commc'ns, Inc.*, 484 F.Supp.2d 1144, 1151 (D. Haw. 2006) (quoting *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004)). Direct evidence "typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer." *Coghlan v. American Seafoods Co. LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005).

Absent direct evidence, a plaintiff must rely on circumstantial evidence, which "can take two forms." *Coghlan*, 413 F.3d at 1095. A plaintiff can "make an affirmative case that the employer is biased," for example, through "sufficiently probative" "statistical evidence" (*Id.* (citation omitted)), or she can show that Defendants "proffered explanation for the adverse action is 'unworthy of credence.'" *Id.* (citation omitted). Circumstantial evidence must be "specific and substantial" to defeat summary judgment. *Coghlan*, 413 F.3d at 1096 (emphasis added, citation omitted).

Barnes offers neither. She provides no direct or circumstantial evidence suggesting that Defendants' reason for rescinding her offer—her unprofessional conduct—was pretextual or racially motivated. It is undisputed that Munoz and Ellis, who conducted multiple video interviews with Barnes prior to extending the offer, were likely aware of her race.[11] [12] The undisputed fact that the same supervisor who hired her also rescinded the offer within weeks undermines any inference of discriminatory intent.

The only purported "direct evidence" Barnes offers is an alleged "you people" remark that was made during the October 20, 2022 phone call[13] and her job title being demoted from HR Manager to Senior HR Generalist.[14] [*See* ECF No. 1 at PageID.4 and ECF No. 79 at

---

[11] On September 27, 2022, Munoz conducted a video interview with Barnes via Microsoft Teams with cameras on. On October 5, 2022, Barnes, Munoz, and Ellis held another video meeting via Teams, also with cameras on. The following day, October 6, 2022, Ellis extended an oral offer to Barnes for the Senior HR Generalist position.

[12] Defendants were aware of Barnes' skin color when they offered the Senior HR Generalist position. [ECF No. 46-1 at PageID.191.]

[13] Barnes stated in her deposition, ECF No. 83-4, "And my phone started staticking [sic], and she said, "You people just" — and then the phone disconnected and I had to call her from other telephone number in Guam."

[14] Barnes asserts "constant changes of the role" in her deposition but fails to reference any other change in the role other than the shift from HR Manager to Senior HR Generalist. [*See* ECF

PageID.598.] However, Barnes admitted that her phone connection was poor when the statement was allegedly made and that the call cut off immediately afterward. [ECF No. 83-4 at PageID.704.] Even assuming the remark was made, it does not constitute direct evidence of pretext. *See Cordova v. State Farm Insurance Co*., 124 F.3d 1145, 1149 (9th Cir. 1997) (finding direct evidence of discriminatory intent where employer referred to employee as a "dumb Mexican"); *Lindahl v. Air France*, 930 F.2d 1434, 1439 (9th Cir. 1991) (finding direct evidence of sexual stereotyping where an employer believed that the female candidates get "nervous" and "easily upset").

Unlike the remarks in *Cordova* and *Lindahl*, the alleged "you people" remark in this case is vague, isolated, and devoid of context. While the Court declines to engage in speculation, it notes that the phrase "you people" could plausibly refer to any number of neutral categories, such as applicants for the position. There is no indication that it was directed at Barnes based on her race or any other prohibited classification. Evidently, notwithstanding Barnes' version of the facts as alleged during her deposition, she offers no specific evidence linking the remark to a discriminatory motive. Without additional context or corroborating facts, the comment does not support an inference of discrimination or demonstrate discriminatory intent, contrary to Barnes' contention.

With respect to the position being changed to Senior HR Generalist, Defendants proactively informed Barnes about the potential shift.[15] After her screening interview, Ellis informed her that the position could either be an HR Manager or HR Generalist role, contingent on whether the then-current GPSI HR Manager decided to leave. [ECF No. 47-1 at PageID.210.]

---

No. 83-4 at PageID.707.]

[15] Ellis and Munoz both notified Barnes of this possibility in their respective interviews. [*See* ECF No. 47-1 at PageID.210; ECF No. 47-8 at PageID.232.]

Shortly after her interview with Munoz, she informed Barnes that the available role would be HR Generalist, as the HR Manager decided to remain in the HR Manager position. [*See* ECF No. 47-1 at PageID.211.] Thus, Barnes was apprised of the potential change before the offer was extended. Defendants' communication with Barnes was consistent with their subsequent actions and do not reflect any discriminatory animus. Accordingly, neither the statement nor the change in her position constitutes direct evidence of bias.

Barnes also fails to produce circumstantial evidence that the decision to rescind her offer was motivated by race. Aside from asserting that the decision was discriminatory because it was made "shortly after she identified her race," she offers no additional evidence. [ECF No. 46-1 at PageID.171.] Upon reviewing the record, the Court finds that Barnes relies solely on uncorroborated allegations and self-serving testimony. Although she asserts that she feels she was discriminated against, her subjective belief, without supporting evidence, is insufficient to create a genuine issue of material fact.

As previously stated, Defendants have articulated legitimate, nondiscriminatory reasons for rescinding her job offer, specifically Barnes' unprofessional conduct during a pre-employment call where she disputed terms she had already accepted in writing. Barnes fails to produce evidence that casts a shadow of doubt on this explanation or suggests that the real reason for the rescission was discriminatory. Accordingly, she cannot overcome Defendants' Motion.

## IV.        CONCLUSION

Based on the foregoing reasons, the Court finds that Barnes has failed to provide a factual or legal basis for her Title VII employment discrimination claim based on her race. Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment.

The Court further DIRECTS the Clerk of Court to enter judgment in favor of Defendants and to close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, July 1, 2025.

_____
Shanlyn A.S. Park
United States District Judge